UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
JOHN MOSQUERA, *pro se*,                                       :
                                                              :
                                       Petitioner,            :
                                                              :        **SUMMARY ORDER**
            -against-                                         :        13-mc-736 (DLI)
                                                              :
UNITED STATES OF AMERICA,                                     :
                                                              :
                                       Respondent.            :
----------------------------------------------------------------x

**DORA L. IRIZARRY, United States District Judge:**

John Mosquera ("Petitioner"), proceeding *pro se*,[1] brings this action seeking to expunge

his record of a criminal arrest. For the reasons set forth below, Petitioner's motion is denied.

I.      **Factual Background**

On April 10, 2012, a complaint was filed against Petitioner, on allegations that he had made

a materially false statement in violation of 18 U.S.C. § 1001(a)(2). *See*, Compl., *United States v.*

*Mosquera*, No. 12-mj-361 ("Criminal Complaint"), Dkt. Entry No. 1. at 1. The Criminal

Complaint was supported by an affidavit alleging that Petitioner was stopped by Drug Enforcement

Administration ("DEA") agents while attempting to board a plane at John. F. Kennedy

International Airport. *Id.* at 2. After stopping Petitioner, the DEA agents asked him if he was

carrying any large sums of money, which he denied; however, when the DEA agents searched his

backpack, they found a sum of money totaling approximately $180,000.00, wrapped in a clear

plastic bag and bundled together by rubber bands. *Id.* at 2-3. When questioned by DEA agents,

---

[1]      In reviewing the instant motion, the Court is mindful that, "[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Accordingly, the Court interprets the motion "to raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).

Petitioner indicated that approximately $30,000.00 was in the bag, but he later changed his response and stated that the money totaled about $100,000.00.  *Id.* at 3.

On June 1, 2012, the government dismissed the § 1001(a)(2) claim, and no further criminal action was taken against Petitioner.  *See*, Order Granting Motion to Dismiss Compl., Dkt. Entry No. 15 at 1.  However, on June 22, 2012, the government filed a civil forfeiture action against the seized U.S. currency found in Petitioner's possession.  *See*, Compl., *United States v. $179,620.00*, No. 12-cv-3133 ("Forfeiture Complaint"), Dkt. Entry No. 1.  The Forfeiture Complaint asserted that the funds were forfeitable because they were used or intended to be used to facilitate a violation of the Controlled Substances Act based on numerous surrounding circumstances pointing to Petitioner's involvement in narcotics operations.  *Id.* at 2-8.  For instance, the Forfeiture Complaint alleged that:  (i) Petitioner made false statements to the DEA agents regarding the amount of money in his possession, his travel plans, his occupation, the purpose for his trip, and his business associates' contact information; (ii) the vast majority of the cash carried by Petitioner consisted of twenty dollar bills, characteristic of narcotics trafficking; and (iii) Petitioner boarded a plane from New York to Burbank, which is a "source city" for narcotics.  *Id.* at 3-7.  In addition, on March 4, 2012, a canine alerted the agents to the presence of narcotics on the cash.  *Id.* at 6.

On October 11, 2013, the court approved a settlement in which the Petitioner agreed to forfeit $158,620.00 to the government, and the government agreed to return $21,000.00 to Petitioner.  *See*, Decree of Forfeiture and Order of Delivery, Dkt. Entry No. 11.

Petitioner now moves to expunge his criminal arrest record, requesting that the charges entitled "1-6300 Money laundering and 1-3599 Dangerous drugs" be removed from his record.  *See*, Motion to Expunge ("Mot. to Expunge"), Dkt. Entry No. 1.  Petitioner argues that, because

these charges were "erroneous," the record should be expunged, noting that the dismissed charges

"are leaving a negative impact on [his] future." *Id.*

## II. Discussion

Pursuant to 28 U.S.C. § 534(a)(1), (4), the Attorney General of the United States shall

"acquire, collect, classify, and preserve identification, criminal identification, crime, and other

records; . . . [and] exchange such records and information with . . . authorized officials of the

Federal Government, including the United States Sentencing Commission, the States, including

State sentencing commissions, Indian tribes, cities, and penal and other institutions." The

justification for the preservation and dissemination of such records "encompass not only the

immediate needs of law enforcement for identification and reference in future criminal

proceedings, but also punishment and deterrence, as well as public informational needs, as

appropriate." *United States v. Morelli*, 1999 WL 459784, at *1 (S.D.N.Y. June 30, 1999).

No federal statute provides for the expungement of arrest records maintained pursuant to

section 534(a). However, the Second Circuit Court of Appeals has held that district courts

maintain the equitable power to order the expungement of such records in "unusual or extreme"

cases. *United States v. Schnitzer*, 567 F.2d 536, 539 (2d Cir. 1977) (citation omitted). Such

extreme circumstances have been found to include: (i) mass arrests prohibiting an individual

determination of probable cause; (ii) arrests whose sole purpose was to harass civil rights workers;

(iii) misuse of records by the police to the defendant's detriment; and (iv) arrests that were proper,

but occurred pursuant to statutes later found unconstitutional. *Id.* at 540. However, the power to

expunge "should be exercised very sparingly, even in cases involving arrests that do not lead to

convictions . . . ." *Morelli*, 1999 WL 459784, at *1; *See also*, *Ali v. United States*, 2013 WL

4048498, at *2 (E.D.N.Y. Aug. 9, 2013) ("Even where individuals have lived law-abiding lives

after their arrests, courts require that they demonstrate extraordinary circumstances or imminent harm as a result of the arrest records in order to obtain an expungement of their records.”).

A request for expungement must be examined on a case-by-case basis by balancing the legitimate needs of law enforcement against the privacy rights of an individual. *Schnitzer*, 567 F.2d at 539-40; *See also*, *United States v. McFadzean*, 1999 WL 993641, at *2 (S.D.N.Y. Nov. 2, 1999) (“The determination of whether expungement is appropriate requires a case-by-case balancing of the defendant’s interest in avoiding the harm the record causes against the government’s interest in effective law enforcement, which the preservation of criminal records furthers.”). In *Schnitzer*, the Second Circuit declined to order a defendant’s arrest record expunged even though the indictment charging the defendant with defrauding a federal agency ultimately was dismissed. 567 F.2d at 537, 540. The court emphasized that the arrest, subsequent indictment, and the law under which the defendant was indicted were all valid, and that the dismissal of the charges did not necessarily establish his innocence. *Id*. at 540. The Second Circuit reaffirmed the high standard required for expungement of a criminal record following dismissal. *See*, *Doe v. United States*, 833 F.3d 192, 197 (2d Cir. 2016) (holding that a district court’s power to expunge “applies only to <u>arrest</u> records after an order of dismissal” and does not include the power to expunge “valid conviction[s].”) (emphasis included in original).

Here, Petitioner does not make any specific claims exemplifying the harm he suffers or will suffer because of his criminal record. *See*, Mot. to Expunge at 1. Instead, Petitioner makes a general claim that the charges related to his dismissed case “are leaving a negative impact on [his] future.” *Id.* However, a generalized claim of potential harm is not a recognized basis for expungement. *See*, *Mullen v. United States*, 2016 WL 1089261, at *2 (E.D.N.Y. March 18, 2016) (“Petitioner fails to identify any actual harm he has suffered, or expects to suffer, as a result of his

criminal record."); *See also*, *Peters v. United States*, 2013 WL 3280880, at \*3 (E.D.N.Y. June 27, 2013) (denying expungement motion following dismissal of petitioner's charge where petitioner claimed the charges were false, but failed to allege any actual harm).

Therefore, while the Court is sympathetic to the Petitioner's circumstances, the generalized negative impact that the arrest record poses is neither unusual nor extreme. *See*, *Schnitzer*, 567 F.2d at 539 (noting that "an arrest record alone can create serious adverse consequences for those who have been arrested in the past," but denying the motion due to lack of extreme circumstances); *See also*, *Doe*, 833 F.3d at 199 (acknowledging "[t]he unfortunate consequences of Doe's conviction" and the United States Attorney General's recognition of "the unfortunate lifelong toll that these convictions often impose on low-level criminal offenders," but finding the district court lacked jurisdiction to expunge). Accordingly, Petitioner's claim for expungement is denied.

## III. Conclusion

For the foregoing reasons, Petitioner's motion to expunge his arrest record is denied and the instant action is dismissed.

SO ORDERED.

Dated: Brooklyn, New York
July 2, 2021

/s/
DORA L. IRIZARRY
United States District Judge